## IN THE U.S. DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TENNESSEE

## WESTERN DIVISION

PATRICK DANCY,

      PLAINTIFF,

v.                               Civil Action No.

LANXESS CORPORATION,          JURY DEMANDED

      DEFENDANT.

## COMPLAINT

COMES NOW, Plaintiff Patrick Dancy (hereinafter, "Plaintiff" or "Mr. Dancy"), by and through undersigned counsel of record, and for his Complaint against Lanxess Corporation (hereinafter, "Defendant" or "Lanxess") and states as follows:

## NATURE OF THE COMPLAINT

1.  Plaintiff brings this action against Lanxess Corporation (hereinafter, "Defendant" or "Lanxess") for discrimination based on his race, in violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq* ("THRA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, ("Title VII").

2.  Plaintiff alleges that Defendant discriminated against him with regards to the terms and conditions of his employment on the basis of his race.

3.  Plaintiff was terminated from his employment with Defendant on or about August 16, 2017, for committing an error in the workplace for which white employees are not similarly disciplined.

4.  Defendant's actions are in direct violation of Title VII and the THRA.

5.  Plaintiff seeks back pay, front pay, punitive damages, compensatory damages, attorney's fees, costs, expenses, and other relief the Court deems appropriate.

## PARTIES

6.  Plaintiff, Patrick Dancy (hereinafter, "Plaintiff" or "Mr. Dancy"), is an adult resident of Stanton, Haywood County, Tennessee.

7.  Defendant Lanxess Corporation (hereinafter, "Defendant" or "Lanxess") is a corporation organized under the laws of the state of Delaware, with its principal office located at 111 RDIC Park W Drive, Pittsburgh, Pennsylvania, 15275, and licensed to do business in the State of Tennessee. Defendant Lanxess may be served with process through its registered agent, Corporation Service Company, at 2908 Poston Avenue, Nashville, TN 37203.

## JURISDICTION AND VENUE

8.  This Court has original federal questions jurisdiction pursuant to 28 U.S.C. §1331, because Plaintiff's claims arise under the laws of the United States, specifically §42 U.S.C. 2000 *et seq.*

9.  The Western District of Tennessee, Western Division, has personal jurisdiction over Defendant because Defendant conducts business in this judicial District.

10. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claim occurred in this District and because Defendant can be found in this District.

11. Further, Plaintiff has exhausted his administrative remedies through the Equal Employment Opportunity Commission, which issued a Right to Sue Letter on or about July 11, 2019.

## FACTS

2

12. Plaintiff Patrick Dancy is an African American male.

13. Defendant Lanxess is in the business of manufacturing, packaging, and shipping chemical intermediaries, additives, specialty chemicals, and plastics.

14. Defendant hired Plaintiff as a General Operator on or about April 24, 2017.

15. Defendant hired Plaintiff to work at its Memphis plant, located at 2571 Fite Road, Memphis, Tennessee 38127.

16. Plaintiff worked for Defendants for approximately four (4) months.

17. During his employment, Plaintiff received positive evaluations from management and his coworkers.

18. Despite this, Defendant applied its policies and procedures in a racially discriminatory manner.

19. Defendant held African American employees to a higher standard of behavior than White employees.

20. Defendant's practice of enforcing policies and procedures in a racially discriminatory manner resulted in Plaintiff receiving several disciplinary actions during his employment.

21. White employees who committed the same infractions were not held to the same standards of behavior, and were either not disciplined as frequently as African American employees, or were not disciplined at all.

22. White employees received more favorable treatment than African American employees at Defendant's place of business.

23. Plaintiff, in his position as General Operator, was assigned to the Pack Station with Mr. Paul Strauss, a White male employee.

24. Pack Station operators are responsible or placing a product on a pallet and packing it to be shipped out.

25. Plaintiff and Mr. Strauss (white), who was training Plaintiff, mistakenly packaged a product on an incorrectly sized pallet for shipment.

26. Both Plaintiff and Mr. Strauss received a written disciplinary reprimand for this error from Mr. Michael Baeder, the Production Supervisor at Defendant's Memphis plant, but Plaintiff was the only employee to suffer an adverse employment action related to this error.

27. Another manager, Ms. Megan Densford, stated that this was a minor error, as the mistake was caught and corrected before the pallet left the plant for delivery.

28. On information and belief, Mr. Strauss is still employed with Defendant.

29. The disciplinary action issued to Mr. Strauss for the pallet error was not unjustifiably held against him.

30. However, the disciplinary action issued to Plaintiff for the same pallet error was held against Plaintiff as a basis for his termination.

31. Defendant's Memphis plant is understaffed.

32. Defendant's Memphis plant has implemented a mandatory overtime schedule for its employees.

33. As a result of this mandatory overtime policy, less-senior employees are forced onto the weekend schedule to work overtime shifts.

34. Mr. Baeder, as the Production Supervisor, assigns the mandatory overtime shifts.

35. While these shifts are mandatory, Defendant will permit an employee to miss a mandatory overtime shift in cases of illness or an approved request for time off.

36. Plaintiff was hired as a General Operator approximately two weeks before another individual, Lee (last name unknown), who is a White male.

37. Lee requested the weekend of July 15, 2017 off from work.

38. Lee made the request for time off on or about July 8, 2018.

39. Defendant granted Lee's request for time off.

40. Plaintiff also made a request for time off on July 8, 2017.

41. Plaintiff requested the weekend of July 22, 2017 off from work.

42. Mr. Baeder, in response to Plaintiff's request for time off, stated "We'll try to work it out."

43. Plaintiff made is request for time off in order to give Defendant sufficient time to find or assign another employee to cover his shift.

44. Instead, Mr. Baeder told Plaintiff on July 20, 2017, that Plaintiff's request for time off was denied.

45. Mr. Baeder then informed Plaintiff he was assigned to a mandatory overtime shift for the weekend of July 22, 2017.

46. Plaintiff became ill over the weekend of July 22, 2017.

47. Plaintiff notified Defendant that he was unable to come in to work due to his illness.

48. Plaintiff secured a doctor's note for his absence and presented it to Mr. Baeder when he returned to work.

49. Mr. Baeder refused to accept the doctor's note, and issued a written disciplinary action to Plaintiff for failing to appear for his scheduled mandatory overtime shift.

50. Defendant discriminated against Plaintiff on the basis of his race by granting a request for time off to a less-senior White employee and denying a request for time off by Plaintiff, a more-senior African American employee.

51. Defendant discriminated against Plaintiff on the basis of his race by refusing to accept a doctor's note as a valid excuse for Plaintiff's absence, when it accepted doctors' notes as excuses for absences from work when brought by White employees.

52. Defendant discriminated against Plaintiff on the basis of his race by issuing a written disciplinary action for a failure to appear for a mandatory overtime shift when presented with a valid excuse for an absence, White employees were not disciplined for failing to appear and were permitted to have their absences excused.

53. In spite of the fact that Defendant's Memphis plant is understaffed, three employees were terminated between January 2017 and August 2017.

54. All three employees terminated between January 2017 and August 2017 were African American males.

55. Mr. Baeder terminated Plaintiff in a meeting on or about August 16, 2017.

56. Mr. Baeder used the disciplinary actions issued to Plaintiff as a result of the racially discriminatory application of workplace policies as the basis for his termination.

57. In the termination meeting, Mr. Baeder stated Plaintiff was "not a good fit" to work for Defendant.

58. This statement, combined with the unequal application of workplace policies and procedures, and termination of other African American employees within months of Plaintiff, demonstrates that Plaintiff was terminated from his employment because of his race.

59. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on or about May 17, 2018, in satisfaction of his duty to first exhaust his administrative remedies before proceeding into court.

60. The EEOC issued Plaintiff a Right to Sue letter on or about July 11, 2019.

## COUNT I – RACE DISCRIMINATION IN VIOLATION OF THE TENNESSEE HUMAN RIGHTS ACT, Tenn. Code Ann. § 4-21-101

61. Plaintiff realleges and incorporates the allegations contained in Paragraphs 1 through 51 above, as if fully set forth herein.

62. Defendant discriminated against Plaintiff on the basis of his race in the terms and conditions of his employment.

63. Plaintiff is African-American, and is therefore a member of a protected class.

64. Plaintiff was qualified for his position, as he was hired and received positive performance evaluations during his employment with Defendants.

65. Plaintiff suffered adverse employment actions in the form of disciplinary actions and termination.

66. Plaintiff received less favorable treatment than similarly situated individuals outside his protected class.

67. Plaintiff received less favorable treatment than similarly-situated White employees, as White employees were not disciplined for the same infractions or at a similar rate as African American employees, including Plaintiff, and White employees did not have disciplinary actions used as a basis for termination as frequently as disciplinary actions formed the basis for termination for African American employees, including Plaintiff.

7

68. Specifically, Plaintiff received disciplinary actions for infractions, but White employees who committed the same infractions did not receive disciplinary actions.

69. The disciplinary actions, awarded to Plaintiff as a result of Defendant's racially discriminatory application of workplace policies and procedures, formed the basis of Plaintiff's termination.

70. Defendant's disproportionate discipline and termination of Plaintiff constitutes discrimination based on Plaintiff's race.

71. Defendant's discrimination negatively impacted the terms and conditions of his employment and compensation.

72. Defendants discriminated against Plaintiff by negatively impacting the terms and conditions of his employment because of his race in violation of the Tennessee Human Rights Act, Tenn. Code Ann. §4-21-101 et seq.

73. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff was injured and suffered damages.

74. Defendant's unlawful conduct caused Plaintiff to suffer economic damages, humiliation, embarrassment, degradation, emotional distress, and mental anguish.

## COUNT I – RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e-2

75. Plaintiff hereby incorporates all allegations contained in Paragraphs 1 through 65 as if they were fully set forth herein.

76. Defendant discriminated against Plaintiff on the basis of his race in the terms and conditions of his employment.

77. Plaintiff is African-American, and is therefore a member of a protected class.

78. Plaintiff was qualified for his position, as he was hired and received positive performance evaluations during his employment with Defendants.

79. Plaintiff suffered adverse employment actions in the form of disciplinary actions and termination.

80. Plaintiff received less favorable treatment than similarly situated individuals outside his protected class.

81. Plaintiff received less favorable treatment than similarly-situated White employees, as White employees were not disciplined for the same infractions or at a similar rate as African American employees, including Plaintiff, and White employees did not have disciplinary actions used as a basis for termination as frequently as disciplinary actions formed the basis for termination for African American employees, including Plaintiff.

82. Specifically, Plaintiff received disciplinary actions for infractions, but White employees who committed the same infractions did not receive disciplinary actions.

83. The disciplinary actions, awarded to Plaintiff as a result of Defendant's racially discriminatory application of workplace policies and procedures, formed the basis of Plaintiff's termination.

84. Defendant's disproportionate discipline and termination of Plaintiff constitutes discrimination based on Plaintiff's race.

85. Defendant's discrimination negatively impacted the terms and conditions of his employment and compensation.

86. Defendants discriminated against Plaintiff by negatively impacting the terms and conditions of his employment because of his race in violation of Title VII, 42 U.S.C. § 200e, et seq.

87. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff was injured and suffered damages.

88. Defendant's unlawful conduct caused Plaintiff to suffer economic damages, humiliation, embarrassment, degradation, emotional distress, and mental anguish.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Patrick Dancy respectfully prays for relief as follows:

1. That Defendant be served and required to answer within the time prescribed by law;

2. That a jury of twelve try this cause;

3. That, upon the hearing of this cause, the Court enter a judgment in favor of Plaintiff Patrick Dancy and award him damages for his lost compensation from the date of Defendants' discriminatory and retaliatory actions in an amount to be proved at trial;

4. That the Court award Plaintiff back pay, front pay, punitive damages, compensatory damages including, but not limited to damages for emotional distress, pain and suffering, embarrassment, and humiliation in an amount not less than $450,000.00 to be proved at trial;

5. That costs and discretionary costs be taxed against Defendant;

6. That costs, attorneys' fees and expert witness fees be assessed against Defendant pursuant to Tenn. Code Ann. § 4-21-306(a)(7) and 42 U.S.C. § 2000e et seq.;

7. That the Court award such other remedies as shall be necessary and proper to eliminate all violations complained of herein, pursuant to Tenn. Code Ann. § 4-21-306(a)(8) and 42 U.S.C. § 2000e et seq;

8. That the Court award such other and further relief as it may find appropriate.

Dated: October 9, 2019                     Respectfully Submitted,


                                             s/ Catherine C. Walsh
                                           Alan G. Crone, TN Bar No. 014285
                                           Catherine C. Walsh, TN Bar No. 028168
                                           The Crone Law Firm, PLC
                                           88 Union Avenue, 14th Floor
                                           Memphis, Tennessee, 38103
                                           901.737.7740 (voice)
                                           901.474.7926 (fax)
                                           acrone@cronelawfirmplc.com
                                           cwalsh@cronelawfirmplc.com

                                           *Attorneys for Plaintiff*