IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **PATRICK DANCY,** | ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    No. 19-cv-02690-SHL-tmp <br> ) |
| **LANXESS CORP.,** | ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO COMPEL**

Before the court by order of reference is defendant Lanxess Corp.'s motion to compel, filed on July 14, 2020. (ECF Nos. 24, 26.) Plaintiff Patrick Dancy filed a response on August 7, 2020. (ECF No. 30.) For the reasons below, Lanxess's motion to compel is GRANTED in part and DENIED in part.

**I.   BACKGROUND**

Plaintiff Patrick Dancy filed a complaint against Lanxess on October 9, 2019, asserting he was discriminated against on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act. 42 U.S.C. § 2000e-2 (2018); Tenn. Code Ann. §4-21-101 *et seq*; (ECF No. 1.) Dancy, an African-American male, began working for Lanxess on or about April 24, 2017, as a general operator at Lanxess's Memphis packing plant. (ECF No. 1, at 3.) He worked there for approximately four

months. (ECF No. 1, at 3.) Dancy alleges that he, along with a white supervisor, made a minor packing error that was quickly resolved, but that he was punished far more harshly than his supervisor. (ECF No. 1, at 4.) Dancy also alleges that Lanxess granted time off more freely to white workers, identifying an incident where a white worker was granted leave while Dancy was not. (ECF No. 1, at 4-5.) When he became sick and could not work on July 22, 2020, Dancy alleges that Lanxess refused to honor his doctor's note and was issued a disciplinary warning when he did not show up to work that day. (ECF No. 1, at 5.) On August 16, 2017, Lanxess terminated Dancy's employment. (ECF No. 1, at 6.) Dancy later found employment with Touchstone. (ECF No. 30, at 5).

Per the court's scheduling order entered on January 14, 2020, all written discovery was supposed to conclude by July 15, 2020. (ECF No. 17.) Discovery generally was to be completed by August 14, 2020. (ECF No. 17.) Lanxess served its first set of Interrogatories and Requests for Production on March 4, 2020. (ECF No. 24, at 10.) The original deadline for Dancy to respond to Lanxess's discovery requests was April 2, 2020, but the parties mutually agreed to extend the deadline to May 29, 2020, in light of the COVID-19 pandemic and counsel for Dancy's transition to remote operations. (ECF No. 24, at 10-11.) On May 29, 2020, Dancy requested to extend the deadline to respond to Lanxess's discovery requests until June 19, 2020. (ECF No. 24, at 11.) Lanxess

objected to the second extension and the parties agreed Dancy's discovery responses were to be due on June 8, 2020. (ECF No. 24, at 11.)

Dancy responded to Defendant's requests on June 19, 2020. (ECF No. 24, at 11.) Lanxess replied with a deficiency letter via email on July 8, 2020, and filed the motion that is before the court on July 14, 2020. (ECF No. 24, at 4, 10.) In particular, Lanxess argues that Dancy's responses to Interrogatories 3 and 6 and Requests for Production 1, 4, 12, 13, 17, 18, 21, 22, and 24 were deficient. (ECF No. 24, at 10-19.) Since this motion was filed, Dancy has provided Lanxess with supplemental discovery responses that address the majority of the issues raised by Lanxess in the present motion and argues that he has provided Lanxess withh all of the requested information and documents that he has in his possession or control. (ECF No. 30, at 1-2.)

## II.  ANALYSIS

**A.  Legal Standard**

The scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1), which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The party seeking discovery is obligated to demonstrate relevance. Johnson v. CoreCivic, Inc., No. 18-CV-1051-STA-tmp, 2019 WL 5089086, at *2 (W.D. Tenn. Oct.

10, 2019).  Upon a showing of relevance, the burden shifts to the party opposing discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case. William Powell Co. v. Nat'l Indem. Co., No. 1:14-CV-00807, 2017 WL 1326504, at *5 (S.D. Ohio Apr. 11, 2017), aff'd sub nom. 2017 WL 3927525 (S.D. Ohio June 21, 2017), and modified on reconsideration, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017).  Six factors are relevant to proportionality: (1) "the importance of the issues at stake in the action;" (2) "the amount in controversy;" (3) "the parties' relative access to relevant information;" (4) "the parties' resources;" (5) "the importance of the discovery in resolving the issues;" and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Parties have a duty to "make a reasonable effort to answer interrogatories, including reviewing information available to them."  Malone v. City of Memphis, No. 18-2201-MSN-tmp, 2020 WL 465036, at *3 (W.D. Tenn. Jan. 28, 2020).  However, "[t]he court cannot compel [a party] to produce what does not exist." Judy v. Pingue, No. 2:08-cv-859, 2009 WL 2365440, at *1 (S.D. Ohio July 27, 2009).  Further, while a responding party may object to discovery requests, objections must be "stated with specificity"; otherwise they are "legally meaningless."  Fed. R. Civ. P. 33(b)(4); Morgan v. AMISUB (SFH), Inc., No. 18-cv-2042-TLP-tmp,

2020 WL 4274586, at *4 (W.D. Tenn. July 24, 2020) (quoting Sobol v. Imprimis Pharms., No. 16-14339, 2017 WL 5035837, at *1 (E.D. Mich. Oct. 26, 2017)).[1]  If a party fails to respond to an interrogatory under Rule 33 or a request for production under Rule 34, or does so deficiently, and the parties have conferred in a good faith attempt to resolve the dispute, the opposing party may file a motion to compel discovery.  Fed. R. Civ P. 37(a)(1), (3)(B)(iii)-(iv).

**B.   Interrogatories and Requests for Production**

Lanxess has moved this court to compel further responses to Interrogatories 3 and 6, and Requests for Production 1, 4, 12, 13, 17, 18, 21, and 24. (ECF No. 24.)  Dancy, on the other hand, asserts that his supplemental responses, sent after this motion was filed, render the majority of these requests moot.  (ECF No. 30.) The court will address each request in turn.

In Interrogatory 3, Lanxess requested that Dancy provide the nature of every category of damages along with a computation of any monetary amount that Dancy was claiming for each category of damages.  (ECF No. 24, at 11-12.)  In his supplemental answers, Dancy articulated that he is requesting damages for unpaid wages,

---

[1] Dancy objected to Interrogatory 1 and Requests for Production 1, 12, 13, 17, 21, 22, and 24 for being overbroad and unduly burdensome without specifying how or why.  (ECF No. 24, at 4-8.) Despite these objections, Dancy provided all responsive documents in his possession for many of these requests.  (ECF No. 24, at 4-8.)

front pay, noneconomic compensatory damages for his emotional distress, and attorney's fees. (ECF No. 30, at 2-4.) For his unpaid wages and front pay, Dancy provided Lanxess with specific dollar amounts and the basis for calculating each. (ECF No. 30, at 3.)[2]

This leaves only the emotional distress damages, for which he demands damages in the amount of $250,000. To support his assertion that "[n]oneconomic compensatory damages are notoriously difficult to quantify," Dancy relies on Prewitt v. Hamline University, to argue that the evidentiary basis for his injury can be his deposition testimony. U.S. Dist. LEXIS 181167, at *6-*7 (M.D. Tenn. Jan. 3, 2018) (citing Moorer v. Baptist Mem. Health Care Sys., 398 F.3d 469, 485 (6th Cir. 2005)); (ECF No. 30, at 4). Prewitt, however, stands for the unrelated proposition that a claim of "'garden variety' emotional distress"—rather than either intentional or negligent infliction of emotional distress—does not waive any privilege for medical records because the party's mental health is not "in controversy". Id.; see also Moorer, 398 F.3d at 485-86 (holding that an emotional injury must be proved by competent evidence even if "emotional injury may be proved without medical support") (citing Turic v. Holland Hosp., Inc., 85 F.3d

---

[2] Dancy is requesting $270,496.00 in unpaid wages had he remained employed by Lanxess and $172,348.00 in front pay, which is the difference between his current income and the pay he would have received had he remained employed by Lanxess. (ECF No. 30, at 3.)

1211, 1215 (6th Cir. 1996)).  Thus, while Dancy's damages for emotional distress can be backed by his testimony, Dancy "retains the burden to introduce adequate proof in support of any damages claim he does make." Prewitt, U.S. Dist. LEXIS 181167, at *7-*8. Dancy testified in his deposition that he does not have any documentation of his claim for compensatory emotional distress damages. (ECF No. 30, at 4.)  Because Dancy has testified that he has no further information to support his claim for emotional distress damages, Lanxess's motion to compel with regard to Interrogatory 3 is DENIED.

In Interrogatory 6, Lanxess requested information about each job that Dancy has applied for since he was terminated by Lanxess and any employment that he has had during that timeframe. (ECF No. 24, at 12-13.)  Dancy initially responded by listing eleven potential employers and noting the two that he interviewed with. (ECF No. 24, at 12-13.)  In his supplemental response, Dancy stated that he does not remember or have any details regarding the two interviews and that he secured employment with Manpower, a temporary placement agency, on January 15, 2018, and Touchstone on July 16, 2018.  (ECF No. 30, at 4-6.)  For both employment periods, Dancy provided Lanxess with his salary, hours worked per week, and estimated total income.  (ECF No. 30, at 3.)  As such, Dancy's supplemental response either shows that he does not have the information requested or adequately responds to the request.  (ECF

No. 30, at 4-6.)  Thus, the motion to compel a response to Interrogatory 6 is DENIED.

In Request for Production 1, Lanxess requested Dancy's tax returns from 2014 to the present.  (ECF No. 24, at 13-14.) Although, Dancy has provided his tax returns from 2018 and 2019, (ECF No. 24, at 14), he has objected to this request on grounds that it is irrelevant, overbroad, and intended to harass him, as his financial records before his employment do not relate to whether Lanxess discriminated against him.  (ECF No. 30, at 6-7.) District courts within the Sixth Circuit have adopted two tests for determining if tax returns are discoverable.  Bricker v. R & A Pizza, Inc., No. 2:10-cv-278, 2011 WL 1990558, at *2 (S.D. Ohio May 23, 2011) (explaining the split of authority within the Sixth Circuit regarding the discoverability of tax returns).  Some courts have adopted a two-part test that analyzes whether the tax returns are relevant to an issue at hand and, if so, then considers if the same information could be acquired through other means.  Id. (citing Smith v. Mpire Holdings, LLC, No. 08-0549, 2010 WL 711797 (M.D. Tenn. Feb. 22, 2010); BM Investments v. Hamilton Family, L.P., No. 06-14991, 2008 WL 1995101 (E.D. Mich. May 6, 2008)). Other courts only consider whether the returns are relevant to a stated claim or defense.  Id.  (citing LaPorte v. B.L. Harbert International, LLC, No. 5:09-CV-219, 2010 WL 4323077 (W.D. Ky. Oct. 26, 2010); Kumar v. Hilton Hotels Corp., No. 08-2689, 2009 WL

3681837 (W.D. Tenn. Oct. 30, 2009); Westbrook v. Charlie Sciara & Son Produce Co., Inc., No. 07-2657, 2008 WL 839745, at *3 (W.D. Tenn. Mar. 27, 2008)).

Because they illustrate income, tax returns are relevant to both claims of lost wages and proving mitigation measures. Bricker, 2011 WL 1990558 at *3; see also Equal Emp't Opportunity Comm'n v. SCI Tenn. Funeral Servs., Inc., No. 05-2718 D/P, 2006 WL 8434923, at *3 (W.D. Tenn. June 30, 2006) ("[I]ncome tax returns are relevant to issues of damages and mitigation."). In Bricker v. R & A Pizza, Inc., the district court noted that tax returns beginning with when the plaintiff was employed by the defendant are relevant in a wrongful termination lawsuit to prove damages, but found that tax returns predating the employment at issue were not "relevant to either her lost wages claim or to the circumstances of allegedly forced resignation." 2011 WL 1990558, at *3. Here, Dancy has clearly placed his financial circumstances at issue by requesting front pay and unpaid wages, making his tax returns since his employment with Lanxess relevant to the present litigation. (ECF No. 30, at 3.) As for his tax returns from before being employed at Lanxess, Lanxess has not addressed how these documents are relevant to the present litigation, beyond stating that tax returns are generally relevant to damages and

mitigation. (ECF No. 24, at 14.)[3] Without a justification as to why Dancy's tax returns are relevant to any claim or defense, the court finds that the tax returns from before 2018 are irrelevant and the motion to compel is DENIED.[4]

As for Request for Production 4, Lanxess requested that Dancy fill out and return various releases for healthcare and employment records. (ECF No. 24, at 14.) Dancy indicated in his supplemental responses that the executed releases have been provided to Lanxess. (ECF No. 30, at 7-8.) Thus, this request is DENIED.

As for Request for Production 12, Lanxess requested any and all documents evidencing an attempt to find employment after Dancy was terminated by Lanxess. (ECF No. 24, at 14-15.) In reply, Dancy provided his resume. (ECF No. 24, at 15.) In his supplemental response, Dancy indicated that he does not have any other documentation and that he cannot recall any communications with potential employers. (ECF No. 30, at 8-9.) Further, Dancy indicated that he has provided Lanxess with documentation of his

---

[3] The burden is on the requesting party to demonstrate why a request is relevant. Johnson, 2019 WL 5089086, at *2.

[4] Regarding the second prong of the discoverability test for the tax returns since Dancy began his employment with Lanxess, the court need not consider whether the documents are otherwise available because the relevant documents have already been provided. (ECF No. 24, at 14.) Moreover, Dancy indicated in his supplemental responses that he has already requested tax documents from the Internal Revenue Service ("IRS") for the years 2014-2017 but has not yet received them. (ECF No. 30, at 7.)

unemployment receipts and income from his subsequent employers. (ECF No. 30, at 9-10.)[5] Thus, because Dancy has provided all responsive documents in his control and cannot be compelled to produce documents that are not in his custody or control, the motion to compel is DENIED.

In Request for Production 13, Lanxess requested any and all documents showing how Dancy has attempted to mitigate his damages. (ECF No. 24, at 15.) Dancy objected that this request is overly broad, unduly burdensome, seeks discovery of privileged documents, is intended to harass or embarrass Dancy, and that it is duplicative of Request for Production 12. (ECF No. 30, at 9.) Dancy further provided his resume and stated that he has no other responsive documents in his possession or control. (ECF No. 30, at 9-10.) In his supplemental response, Dancy reiterated his production with regard to Request for Production 12 of his unemployment receipts, his income at Manpower, and his forthcoming pay records from Touchstone. (ECF No. 30, at 9-10.) Because Dancy cannot be compelled to provide what he does not have and because he has since produced documentation of his income streams since being terminated by Lanxess, the motion to compel is DENIED.

---

[5]Dancy states that he has not yet received all responsive documents, such as pay records, from his current employer but will supplement his responses when he does. (ECF No. 30, at 10.)

- 11 -

In Request for Production 17, Lanxess requested any and all of Dancy's bank account statements from 2014 to the present. (ECF No. 24, at 15-16.) Dancy replied that this request mirrors Request for Production 1 — seeking his tax returns from 2014 until the present — and that it seeks information from before he was employed with Lanxess. (ECF No. 30, at 10-11.) Dancy also contends that acquiring the requested documents would force him to incur an undue expense, as each month's statement costs him $5.00 to obtain, totaling about $400.00 for the entire time period requested. (ECF No. 30, at 10-11.) Lanxess argues that Dancy's bank statements are relevant to assessing Dancy's claimed damages and his claimed attempts to mitigate damages. (ECF No. 24, at 15-16.) However, as discussed more thoroughly with Request for Production 1, Lanxess has failed to show why Dancy's financials from before he was employed with Lanxess are relevant to assessing his lost wages claim during his employment and his damages that resulted from his termination. Thus, the court finds that Dancy's bank statements from before 2017 are irrelevant and thus not discoverable.

Regarding the remaining bank statements, Lanxess relies on ADT Securities Services, Inc. v. Alarm Co. to support its contention that the evidence is discoverable. No. 05-2779 MV, 2006 WL 8435887, at *6 (W.D. Tenn. June 12, 2006); (ECF No. 24, at 15-

16.)[6]  Dancy, however, argues that he has suffered an undue financial burden and that the request is overly invasive. (ECF No. 30, at 11.) In his supplemental response, Dancy noted that he has already requested the responsive documents from his bank, and thus has already incurred the necessary expenses. (ECF No. 30, at 11.)

Pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)(i), courts can, for good cause, limit the scope of discovery to protect a party from incurring an undue burden or expense. Generally, "the party responding to a discovery request" must incur the cost of complying with a discovery request unless compliance would be unduly expensive. Medtronic Sofamor Danek, Inc. v. Michelson, 229 F.R.D. 550, 553 (W.D. Tenn. 2003) (citing Rowe Entm't, Inc. v. The William Morris Agency Inc., 205 F.R.D. 421, 428-29 (S.D.N.Y. 2002). Here, Dancy has already paid the $400 to obtain his bank statements. (ECF No. 30, at 10-11.) The court finds that the request was not unreasonably expensive. Thus, Dancy's objection that the request creates an undue financial burden is OVERRULED.

---

[6]There, the court found that a company's bank statements were relevant to a claim for lost profits and damages. Id. That case, however, is not exactly on point with the present case because a company's bank statements will show net income and net expenses, which in turn shows the net profit, while an individual's bank statements will show a wide variety of miscellaneous and personal expenses. See id.

As such, Request for Production 17 is DENIED with respect to the bank statements that pre-date Dancy's employment, but GRANTED for the records reflecting Dancy's bank statements after Dancy began his employment with Lanxess.[7]

In Request for Production 18, Lanxess has requested any and all documents that support Dancy's claim for emotional distress damages. (ECF No. 24, at 16.) However, as discussed with Interrogatory 3, Dancy does not intend to prove his emotional distress beyond his testimony and does not have any documents or tangible evidence supporting his claim. (ECF No. 30, at 12.) As such, this motion to compel is DENIED.

As for Request for Production 21, Lanxess has requested all documents used to support Dancy's contentions in Paragraph 17 of the complaint.[8] (ECF No. 24, at 16-17.) In his initial response to the Request for Production, Dancy objected on the grounds that he has already produced his performance reviews. (ECF No. 24, at 17.) However, Dancy did not respond to the request in his opposition to the present motion. (ECF No. 30, at 12-13.) As

---

[7]As for Dancy's concern that discovery of his financial records is overly invasive to assess his post-termination emotional distress claims, Dancy remains free to move to exclude these records at trial or for a protective order limiting their use. (ECF No. 30, at 11.)

[8]Paragraph 17 of the complaint reads: "During his employment, Plaintiff received positive evaluations from management and his coworkers." (ECF No. 1, at 3.)

this request in the motion to compel is uncontested, Request for Production 21 is GRANTED to the extent that Dancy has not produced every positive evaluation in his possession. If there are no more positive evaluations for Dancy to disclose, Dancy must supplement his response to the request to reflect that.

In Request for Production 22, Lanxess requested any and all documentation used to support Dancy's contentions in Paragraph 22 of the complaint. (ECF No. 24, at 17.)[9] In response, Dancy provided only his own performance reviews. (ECF Nos. 24, at 17; 30, at 14.) In his supplemental response, Dancy indicated that he testified in his deposition as to his contentions that white employees received more favorable treatment than African-American employees and that he does not have any documents in his possession or control that respond to the request and that he does not have any other documentation of disparate treatment. (ECF No. 30, at 14.) As such, this motion to compel is DENIED.

In Request for Production 24, Lanxess requested any and all documents supporting the allegations in Paragraph 48 of the complaint. (ECF No. 24, at 17-18.)[10] Dancy has since provided

---

[9]Paragraph 22 of the complaint reads: "White employees received more favorable treatment than African American employees at Defendant's place of business." (ECF No. 1, at 3).

[10]Paragraph 48 of the complaint reads: "Plaintiff secured a doctor's note and presented it to Mr. Baeder when he returned to work." (ECF No. 1, at 5.)

the doctor's note that was referred to in Paragraph 48 of the complaint and was deposed on the same. (ECF No. 30, at 14-15.) Thus, this request is DENIED.[11]

### III. CONCLUSION

For the reasons above, Lanxess's motion to compel is GRANTED in part and DENIED in part. To the extent that Lanxess's motion is granted, Dancy must provide supplemental responses within fourteen (14) days of this order.

IT IS SO ORDERED.

s/ Tu M. Pham_____
TU M. PHAM
Chief United States Magistrate Judge

September 3, 2020_____
Date

---

[11]Dancy has also responded objecting to producing documents responsive to Request for Production 19. (ECF No. 30, at 12-13.) However, Request for Production 19 is not included in Lanxess's motion to compel — although it is mentioned in the July 8, 2020 deficiency letter — and thus is not currently before the court. (ECF No. 24, at 7-8, 16.)