## IN THE US DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| **PATRICK DANCY**, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:19-cv-02690-SHL-tmp** |
| | ) | |
| **LANXESS CORPORATION**, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

The Defendant, Lanxess Corporation ("Defendant"), by and through counsel and pursuant to Local Rule 56.1(c), submits its Reply to Plaintiff's Response in Opposition to Defendant's Statement of Undisputed Material Facts[1] and its Response to Plaintiff's Statement of Additional Facts as follows:

**3.** Plaintiff began his employment with Defendant on April 24, 2017 as a "general operator" at Defendant's "pack station." (Compl., ¶ 14; Plf. Dep., pp. 42, 93; Bader Dep., pp. 13, 26; Charge of Discrimination.)

**Response:** Undisputed, but incomplete. Plaintiff testified that all employees not holding management positions, and other than a training manager and a clerk, held the job title of "general operator," and their job duties varied depending on what are of the plant they worked in. Ex. A -

---

[1] Defendant will only include those facts that are allegedly disputed by Plaintiff.

Dancy Dep. at p. 94:4-21. There was no special designation for Plaintiff as a general operator trainee. *Id.*

**Reply:** Defendant has not alleged that Plaintiff was specially designated as a general operator. Defendant notes, however, that general operators are subject to additional, mandatory overtime obligations following completion of their line management assessments. *See* Replies to Plaintiff's Responses to Fact Nos. 17 and 21.

4.   Meagan Densford and Michael Bader were supervisors at Defendant's Memphis facility, where Plaintiff worked. (Plf. Dep., p. 152–53, 155–56.)

**Response:** Disputed as incomplete. Ms. Densford was Plaintiff's supervisor for a period of time until Mr. Michael Bader took over the supervisory responsibility for general operators and pack station employees. *Id.* at p. 152:14-153:12.

**Reply:** Defendant does not dispute that Michael Bader took over the supervisory responsibility for Plaintiff from Meagan Densford. Regardless, this fact remains undisputed; both Mr. Bader and Ms. Densford were supervisors.

5.   Michael Bader was the Production Supervisor; all of the general operators assigned to the pack station reported to him. (Bader Dep., pp. 7–8.)

**Response:** Disputed as incomplete. Ms. Densford was Plaintiff's supervisor for a period of time until Mr. Michael Bader took over the supervisory responsibility for general operators and pack station employees. *Id.* at p. 152:14-153:12.

**Reply:** Defendant does not dispute that Michael Bader took over the supervisory responsibility for Plaintiff from Meagan Densford. Regardless, this fact remains undisputed; both Mr. Bader and Ms. Densford were supervisors.

6.      Plaintiff, "at no time[,]" had "any conflicts or disagreements" with Meagan Densford or Michael Bader. (Plf. Dep., p. 162.)

**Response:** Disputed as incomplete, and mischaracterization. Plaintiff testified he disagreed with the Formal Contact issued to him by Mr. Bader. *Id.* at p. 199:19-200:9.

> **Reply:** Plaintiff testified:
>
> Q.      And how was your working relationship with your -- with your managers?
>
> A.      Good.
>
> Q.      Any conflicts or disagreements with your managers?
>
> A.      No.

(Plf. Dep., pp. 162–63.)[2] As cited above, Plaintiff testified that he disagreed with the Formal Contact, not Mr. Bader.

7.      Plaintiff had a "good" working relationship with management. (Plf. Dep., pp. 162–63.)

**Response:** Disputed as incomplete and mischaracterization. Mr. Dancy testified he got along with Ms. Megan Densford, but that he did not speak to Mr. Bader frequently. Ex. A - Dancy Dep. at p. 163:5-13; 165:24-166:23.

> **Reply:** *See* Reply to Plaintiff's Response to Fact No. 6. Plaintiff testified:
>
> Q.      He never treated you unprofessionally or disrespectfully, did he?
>
> A.      No. I mean, that's what I'm saying. He didn't treat me any kind of way, professional or otherwise. He just wasn't a talkative person . . . Michael wasn't talk -- he wasn't a talker. He didn't -- he wasn't an interactive supervisor.

(Plf. Dep., p. 166.) Plaintiff cannot legitimately dispute that he had a "good" working relationship with Mr. Bader by claiming that Mr. Bader was not interactive or talkative.

---

[2]      Additional portions of Plaintiff's deposition testimony are attached as Exhibit 1. Additional portions of Mr. Bader's deposition testimony are attached as Exhibit 2.

**8.**    Michael Bader never treated Plaintiff "unprofessionally or disrespectfully ...... " (Plf. Dep., pp. 166–68; Bader Dep., p. 81.)

**Response:** Disputed as incomplete, and mischaracterization. Plaintiff asserts that Mr. Bader unlawfully terminated him on the basis of his African-American race. Complaint, ¶¶ 55-58.

**Reply:** Whether or not Plaintiff was terminated on the basis of his race is a legal conclusion, not a dispute of fact. Furthermore, Plaintiff totally ignores his testimony, cited above, when asked this very question. *See* Reply to Plaintiff's Response to Fact No. 7.

**9.**    Plaintiff is not aware of any other employees that he believes were unfairly treated or terminated. (Plf. Dep., pp. 204, 216.)

**Response:** Disputed as incomplete and mischaracterization. Plaintiff testified he was aware of at least two employees, Damon (last name unknown) and Clayton Grayson, who were terminated while he was employed with Defendant. Specifically, Plaintiff testified he recalled that Damon was terminated for the same infraction as a white employee. Ex. A - Dancy Dep. p. 239:5-10; 250:2-251:14; Ex. B - EEOC Charge.

**Reply:** Again, Plaintiff ignores his own testimony, in which he indicated:

Q.      . . . You will recall in your Initial Disclosures and in your interrogatory responses you identified two individuals: Damon and Clayton. . . .

A.      Grayson, that sounds right.

Q.      And are both of these men African American?

A.      Yes.

**Q.      Do you know anything about the circumstances surrounding either of these gentlemen's terminations?**

**A.      No.**

4

> Q.    I want you to look at please Exhibit 7, this is your EEOC charge. Have a look at page 2, paragraphs 5 and 6. If you could take a look at those for me, please.
>
> . . .
>
> Q.    All right. And in your EEOC charge are you asserting that Damon was terminated for an offense that another white employee also committed and was terminated for, the white employee was not?
>
> A.    Yes.
>
> Q.    Does this refresh your recollection any?
>
> A.    Yes, it does.

(Plf. Dep., pp. 250–251.) Rule 612 of the Federal Rules of Evidence is used to "refresh" a witness' memory, not introduce facts of which the witness has no personal knowledge. *See* Fed. R. E. 612(a). Plaintiff did not testify that he *could not remember* the circumstances of Damon's and Clayton's terminations, he testified that he *did not know* the circumstances of their terminations. He further testified:

> Q.    Are there any individuals you believe were unfairly treated or terminated?
>
> A.    No.
>
> Q.    Okay. You're not aware of the specifics of anybody else's termination or why they were terminated --
>
> A.    No.
>
> Q.    -- at Lanxess?
>
> A.    No.

(Plf. Dep., p. 204.) He also testified:

> Q.    Any other employees that you believe were mistreated or treated unfairly that you're aware of or familiar with their circumstances?
>
> A.    No. I'm not familiar with any other employee's circumstances.

(Plf. Dep., p. 216.) Plaintiff cannot substitute his clear, unequivocal testimony with unsubstantiated allegations from his Charge of Discrimination.

12.     At the pack station, Plaintiff was responsible for packaging material and ensuring that the packaged material was placed on the correct pallet. (Compl., ¶ 24; Plf. Dep., pp. 99–101; Bader Dep., pp. 13–14; Charge of Discrimination.)

**Response:** Disputed as incomplete. Plaintiff was not solely responsible for the correct operation of the pack station, as Paul Strauss was also assigned to work the pack station, and trained Plaintiff on the same. Ex. A - Dancy Dep. at p. 110:2-113:4.

   **Reply:** Defendant has not alleged that Plaintiff was solely responsible for the correct operation of the pack station.

14.     Plaintiff understands that, if material is mislabeled or if the material is on the wrong type of pallet, it is problematic. (Plf. Dep., pp. 107–08, 112, 189.)

**Response:** Disputed as incomplete. Plaintiff did not bear the sole responsibility for ensuring that materials assembled at the pack station were correctly labeled or placed on the correct type of pallet, as Mr. Paul Strauss was also assigned to the pack station and provided Plaintiff with some of his training. *Id.* p. 110:2-113:4.

   **Reply:** Defendant has not alleged that Plaintiff was solely responsible for the correct operation of the pack station. In fact, the other employee responsible for using the wrong pallet who worked with Plaintiff on the shift at issue, Paul Strauss (white male), also received a formal contact for the same issue.

17.     To be eligible for a particular position, an employee must pass a "line management assessment," indicating that he can operate each piece of equipment used in his particular position. (Plf. Dep., p. 118; Bader Dep. pp. 60–61.)

**Response:** Disputed as mischaracterization. Plaintiff testified that a Line Management Assessment (LMA) is required for an employee to demonstrate his or her knowledge of operating individual pieces of machinery at the conclusion of his or her training. *Id.* at p. 118:5-12. This has no bearing on an employee's "eligibility" or "qualification" for a position, which should have been determined at an employee's time of hire. If Plaintiff was not "eligible" or "qualified" for the position of general operator, Defendant would not have hired him.

**Reply:** Plaintiff, without citing to the record, misstates that a line management assessment "has no bearing" on an employee's 'eligibility' or 'qualification' for a position. . . ." Regardless, Plaintiff's testimony, taken under oath, contradicts this unfounded assertion:

> Q. Am I correct in assuming that to be able to get put into an overtime position, you would have to be **qualified** for whatever it is you're put in a position to do? In other words, if you're in the pack -- what is it called?
>
> A. Pack station.
> Q. Pack station. You're in the pack station, **you need to be qualified and trained to work the pack station?**
>
> A. Yes.
>
> . . .
>
> Q. Okay. **What did it take to get trained to be qualified to do what you were doing?**
>
> A. You have to pass what is called a line management assessment or LMA, and that is where the supervisor go over each piece of equipment that you will be operating and you have to show them or explain to them that you can operate that piece of equipment.

(Plf. Dep., pp. 117–18.) Plaintiff cannot simply avoid facts that are unfavorable to his position to defeat a motion for summary judgment.

**19.**  A true and accurate copy of Plaintiff's line management assessment is attached as Exhibit A to Liz Deangelis' Declaration. (DeAngelis Dec., ¶ 3.)

**Response:** Disputed as calling for a legal conclusion. The documents attached to Ms. DeAngelis' declaration speak for themselves.

**Reply:** Defendant is simply laying the foundation for the admissibility of Plaintiff's line management assessment. Regardless, Plaintiff points to no facts in the record disputing this declaration.

**20.** Plaintiff's line management assessment was prepared and kept in the course of a regularly conducted business activity. (DeAngelis Dec., ¶ 4.)

**Response:** Disputed as calling for a legal conclusion. The documents attached to Ms. DeAngelis' declaration speak for themselves.

**Reply:** Defendant is simply laying the foundation for the admissibility of Plaintiff's line management assessment. Regardless, Plaintiff points to no facts in the record disputing this declaration.

**21.** Until an employee is eligible for a particular position, he cannot be forced to work mandatory overtime. (Plf. Dep., p. 119; Bader Dep., pp. 44, 60–61, 91.)

**Response:** Disputed as mischaracterization as to the use of the term "eligible." Disputed as incomplete, as an employee cannot be forced to work mandatory overtime until he or she passes a "line management assessment." Ex. A - Dancy Dep. at p. 119:1-6.

**Reply:** Here, Plaintiff is correct, and there is no dispute; an employee cannot be forced to work mandatory overtime until he or she passes a line management assessment, which deems the employee eligible for a particular position. *See* Reply to Plaintiff's Response to Fact No. 17.

**22.** Lee Sherrill, a white male, was hired around the same time as Plaintiff. (Compl., ¶ 36; Plf. Dep., pp. 92, 161; Bader Dep., pp. 13–14, 113; Charge of Discrimination.)

**Response:** Undisputed as to Mr. Sherrill's race and gender. Disputed as incomplete as to Mr. Sherrill's hire date. Plaintiff testified that Mr. Sherrill was hired approximately two (2) weeks after Plaintiff was hired. *Id.* at p. 92:8-17.

**Reply:** As cited above, Mr. Bader believed that Lee Sherrill and Plaintiff started on the same day and were hired at the same time. (Bader Dep., pp. 14, 113.) Plaintiff testified that Mr. Sherrill was hired two weeks after him. (Plf. Dep., p. 92.) To reconcile this testimony, Defendant used the phrase "around the same time" in Fact No. 22. Defendant believes that two weeks is within the scope of "around the same time," but, for purposes of its Motion for Summary Judgment, Defendant will concede that Mr. Sherrill was hired two weeks after Plaintiff.

25.     A true and accurate copy of Lee Sherrill's line management assessment is attached as Exhibit B to Liz Deangelis' Declaration. (DeAngelis Dec., ¶ 5.)

**Response:** Disputed as calling for a legal conclusion. The documents attached to Ms. DeAngelis' declaration speak for themselves.

**Reply:** Defendant is simply laying the foundation for the admissibility of Mr. Sherrill's line management assessment. Regardless, Plaintiff points to no facts in the record disputing this declaration.

26.     Lee Sherrill's line management assessment was prepared and kept in the course of a regularly conducted business activity. (DeAngelis Dec., ¶ 6.)

**Response:** Disputed as calling for a legal conclusion. The documents attached to Ms. DeAngelis' declaration speak for themselves.

**Reply:** Defendant is simply laying the foundation for the admissibility of Mr. Sherrill's line management assessment. Regardless, Plaintiff points to no facts in the record disputing this declaration.

27.     When hired, Defendant's employees go through a 90-day probationary period. (Bader Dep., p. 20.)

**Response:** Undisputed that Defendant's employees are subject to a 90-day probationary period. Disputed as vague and incomplete as to the calculation of the 90- day period. Mr. Bader testified that Defendant only counts the actual days an employee works towards the probationary period, rather than calendar days. Ex. C - Bader Dep. at p. 20:2-13.

**Reply:** The calculation of Plaintiff's probationary period is not in dispute in this matter. Regardless, Defendant does not dispute Plaintiff's additional fact that "Defendant only counts the actual days an employee works towards the probationary period, rather than calendar days."

29.     Plaintiff's 30-day review, which occurred on June 14, 2017, appears to be "exactly" what he received on the date of his 30-day review. (Plf. Dep., p. 185; DeAngelis Dec., Ex. C.)

**Response:** Disputed as incomplete. Plaintiff testified that he was not sure if his thirty-day review was filled prior to or during his review meeting with Ms. Densford. Ex. A - Dancy Dep. at p. 182:6-19; 185:5-8.

**Reply:** Whether or not Plaintiff knew his 30-day review was filled out prior to or during his review meeting with Ms. Densford is immaterial; he testified:

Q.      Did you sign [the thirty-day review]?

A.      Yes, I did.

Q.      That's your signature?

A.      Yes. That is my signature.

Q.      And this is exactly what you got that day from what you recall?

A.      From what I recall. Yes.

(Plf. Dep., p. 185.)

**30.** Plaintiff's "quality of work" and "quantity of work" were considered unsatisfactory at the time of Plaintiff's 30-day review. (Bader Dep., pp. 33–34, 99; DeAngelis Dec., Ex. C.)

**Response:** Disputed as incomplete. Plaintiff stated that Ms. Densford said he was doing a good job in spite of whatever concerns she may have had over quality or quantity of work. *Id.* at p. 181: 16-22. Disputed further that the documents attached to Ms. DeAngelis' declaration speak for themselves.

**Reply:** It is undisputed that Plaintiff has no issue with his 30-day review or that he felt that he was "sure he could have improved" in the areas noted in his 30-day review. *See* Facts No. 31 and 32. Moreover, for purposes of Defendant's Motion for Summary Judgment, Defendant does not dispute that Plaintiff testified that Ms. Densford said the following:

> A.   Meagan told me I was doing a good job and she appreciated it. Some of her concerns were the -- of course, being new the quality of work and, you know, the quantity of work was mentioned, but overall I was doing a good job.

(Plf. Dep., p. 181.) Regardless, despite Ms. Densford's alleged comments, Plaintiff cannot and does not dispute that his "quality of work" and "quantity of work" were considered unsatisfactory at that time and were marked as such on his 30-day review.

**34.** A true and accurate copy of Plaintiff's 30-day review is attached as Exhibit C to Liz Deangelis' Declaration. (DeAngelis Dec., ¶ 7.)

**Response:** Disputed as calling for a legal conclusion. The documents attached to Ms. DeAngelis' declaration speak for themselves.

**Reply:** Defendant is simply laying the foundation for the admissibility of Plaintiff's 30-day review. Regardless, Plaintiff points to no facts in the record disputing this declaration.

**35.** Plaintiff's 30-day review was prepared and kept in the course of a regularly conducted business activity. (DeAngelis Dec., ¶ 8.)

**Response:** Disputed as calling for a legal conclusion. The documents attached to Ms. DeAngelis' declaration speak for themselves.

   **Reply:** Defendant is simply laying the foundation for the admissibility of Plaintiff's 30-day review. Regardless, Plaintiff points to no facts in the record disputing this declaration.

**36.**   Following Plaintiff's 30-day review, he remained employed as Defendant continued to work with Plaintiff in an attempt to improve his performance to an acceptable level. (Bader Dep., pp. 34–35.)

**Response:** Disputed as mischaracterization and incomplete. Following his 30-day review, Plaintiff remained employed with Defendant as he progressed through his probationary period. Plaintiff stated that Ms. Densford said he was doing a good job in spite of whatever concerns she may have had over quality or quantity of work. *Id.* at p. 181: 16-22.

   **Reply:** *See* Reply to Plaintiff's Response to Fact No. 33. Here, Plaintiff fixates on Ms. Densford's words of affirmation and ignores her concerns regarding his "quality of work" and "quantity of work." Moreover, Plaintiff personally noted that he was "sure he could have improved" in the areas noted in his 30-day review. *See* Fact No. 32.

**39.**   Following a successful line management assessment, an employee receives an increase in pay. (Bader Dep., p. 95.)

**Response:** Disputed as mischaracterization. Plaintiff testified that he received an increase in his pay to the full amount available for his position during his probation without completing his LMA. Ex. A - Dancy Dep. at p. 177:9-178:9.

   **Reply:** Defendant has not alleged that Plaintiff did not receive an increase in his pay without completing his line management assessment nor, for purposes of its Motion for Summary Judgment, does it dispute this fact as it is not material.

42.     Lee Sherrill wanted to be off on the weekend of July 14, 2017. (Compl., ¶ 37; Plf. Dep.,

pp. 142–44, 218; Charge of Discrimination.)

**Response:** Disputed as incomplete. Plaintiff testified that Mr. Sherrill requested to be off over the

weekend of July 14, 2017. *Id.* at p. 142:7-16.

    **Reply:** Plaintiff's technical distinction between "wanted to be off" and "requested to be

off" is misplaced. Obviously, Mr. Sherrill wanted to be off:

      A.     . . . So Lee asked for the previous weekend off which was his anniversary
           weekend, and I asked for the following weekend off. . . .

(Plf. Dep., p. 142.) Because Mr. Sherrill wanted to be off, he requested to be off. For purposes of

Defendant's Motion for Summary Judgment, Defendant does not dispute that Mr. Sherrill

requested to be off the weekend of July 14, 2017.

44.     Plaintiff was scheduled for his first forced overtime shift on Saturday, July 22, 2017. (Plf.

Dep., pp. 140, 149, 165; Bader Dep., pp. 59–60, 62, 69.)

**Response:** Disputed. Plaintiff testified that the first time he was scheduled for a forced overtime

shift was the weekend of July 21, 2017. *Id.* at 165:1-5.

    **Reply:** Again, Plaintiff's reliance on technicalities is misplaced. Plaintiff was scheduled

for a forced overtime shift over the weekend of July 21, 2017, which includes Saturday, July 22,

2017. Regardless, Plaintiff confirmed this date during his deposition:

      Q.     . . . Mr. Dancy, as I understand it, the first time that you were assigned
           overtime was Saturday, July I think 22nd of 2017, right?

      A.     Yes.

(Plf. Dep., p. 140.) Plaintiff further testified:

      Q.     All right. And then when you were notified, what were you notified that you
           were going to have to work, which shift?

      A.     Day shift Saturday.

> Q.     Okay. That would have been day shift Saturday, July the 22nd I believe.
>
> A.     Yes.

(Plf. Dep., p. 149.)

**46.**     On Friday, July 21, 2017, Plaintiff called Michael Bader and told him that he was not going to work on Saturday, July 22, 2017. (Plf. Dep., pp. 132, 142; Bader Dep., pp. 59, 72-73; Charge of Discrimination.)

**Response:** Disputed. Plaintiff called Mr. Bader over the weekend and advised that he had suffered an injury and was unable to work the weekend of July 22, 2017. *Id.* at p. 130:17-132:10.

**Reply:** Here, Plaintiff does not dispute the fact, but merely attempts to manufacture a fact dispute by inserting the alleged reason why he was not going to work on Saturday, July 22, 2017. This attempt, however, is futile. By telling Mr. Bader that he allegedly suffered an injury and was not able to work that weekend, he, by default, told Mr. Bader that he was not going to work on July 22, 2017.

**47.**     Plaintiff had previously indicated that he wanted to be off that weekend. (Compl., ¶¶ 41, 44, 45; Plf. Dep., pp. 142–43, 149, 218; Bader Dep., p. 70; Charge of Discrimination.)

**Response:** Disputed as incomplete, and mischaracterization. Plaintiff had requested to be off for the weekend of July 22, 2017, but sustained an injury and was unable to come to work that weekend. *Id.* at p. 130:17-132:10. Plaintiff advised Mr. Bader of his injury and that he was unable to work. *Id.*

**Reply:** Whether or not he actually appeared for work on July 22, 2017, Plaintiff cannot dispute that, *previously*, he had indicated that he wanted to be off that weekend. He testified:

> Q.     So did you ever -- did you ever ask any time in -- did you ever ask for a weekend off?

> A.      Yes. I asked for that weekend off.
>
> Q.      Tell me about that.
>
> A.      I asked for the weekend of July 23rd off. . . .

(Plf. Dep., p. 142.) Specifically, he wanted to be off that weekend for his anniversary:

> Q.      Okay. Why did you want off that weekend?
>
> A.      Because that was the weekend of my anniversary.

(Plf. Dep., p. 149.)

**48.**   Plaintiff did not show up for work on Saturday, July 22, 2017. (Plf. Dep., p. 135; Bader Dep., p. 71.)

**Response:** Disputed. Plaintiff called Mr. Bader over the weekend and advised that he had suffered an injury and was unable to work the weekend of July 22, 2017. Ex. A - Dancy Dep. at p. 130:17-132:10.

> **Reply:** Again, Plaintiff cannot dispute that, *for whatever reason*, he did not show up for work on Saturday, July 22, 2017.

**49.**   On July 26, 2017, Plaintiff received his 60-day review. (Plf. Dep., p. 195; Bader Dep., pp. 38–39, 52; DeAngelis Dec., Ex. D.)

**Response:** Undisputed that Plaintiff received his 60-day review on or about July 26, 2017. Disputed that the document produced by Defendant in discovery is an accurate copy of the document he received at the time of the meeting, as Plaintiff testified that he would not have signed it if all the notations were present at the time of the meeting. *Id.* at p. 198:5-199:8.

> **Reply:** As stated in Plaintiff's Response, "[u]ndisputed that Plaintiff received his 60-day review on or about July 26, 2017." Plaintiff's additional comments cannot change the date in which he received his 60-day review.

50.     Plaintiff signed his 60-day review. (Plf. Dep., p. 198; Bader Dep., pp. 53, 109; DeAngelis Dec., Ex. D.)

**Response:** Disputed as incomplete. Plaintiff testified that the document produced by Defendant in discovery is not identical to the document he received at the time of the meeting, as he would not have signed it if all the notations were present at the time of the meeting. *Id.*

**Reply:** Whether or not Plaintiff *would have* signed it does not change that he *did* sign it. Plaintiff's signature appears on the 60-day review.

51.     A true and accurate copy of Plaintiff's 60-day review is attached as Exhibit D to Liz Deangelis' Declaration. (DeAngelis Dec., ¶ 9.)

**Response:** Disputed as calling for a legal conclusion. The documents attached to Ms. DeAngelis' declaration speak for themselves.

**Reply:** Defendant is simply laying the foundation for the admissibility of Plaintiff's 60-day review. Regardless, Plaintiff points to no facts in the record disputing this declaration.

52.     Plaintiff's 60-day review was prepared and kept in the course of a regularly conducted business activity. (DeAngelis Dec., ¶ 10.)

**Response:** Disputed as calling for a legal conclusion. The documents attached to Ms. DeAngelis' declaration speak for themselves.

**Reply:** Defendant is simply laying the foundation for the admissibility of Plaintiff's 60-day review. Regardless, Plaintiff points to no facts in the record disputing this declaration.

53.     Michael Bader drafted all of the notes present on Plaintiff's 60-day review. (Bader Dep., p. 40; DeAngelis Dec., Ex. D.)

**Response:** Disputed. Plaintiff testified that the document produced by Defendant in discovery is not identical to the document he received at the time of the meeting, as he would not have signed it if all the notations were present at the time of the meeting. *Id.* at p. 198:5-199:8.

**Reply:** Whether or not Plaintiff would have signed the 60-day review or if the notes were present on the 60-day review when Plaintiff signed it, Plaintiff has pointed to no fact in the record disputing this fact and, in fact, cannot dispute that Mr. Bader drafted the notes:

Q.   Okay. So this -- I believe it's checked as 60-day review; is that right?

A.   Yes. That's his 60-day review.

Q.   Okay. And then whose handwriting is this in the middle of the document?

A.   This is all my handwriting, the whole thing.

(Bader Dep., p. 40.)

**54.**   Plaintiff's failure to appear for his first forced overtime shift on July 22, 2017, was included on his 60-day review documentation. (Bader Dep., p. 44; DeAngelis Dec., Ex. D.)

**Response:** Disputed as incomplete and mischaracterization. Plaintiff had requested to be off for the weekend of July 22, 2017, but sustained an injury and was unable to come to work that weekend. Ex. A - Dancy Dep. at p. 130:17-132:10. Plaintiff advised Mr. Bader of his injury and that he was unable to work. *Id.*

**Reply:** Again, the reasoning behind Plaintiff's failure to appear for his first forced overtime shift has no bearing on whether or not the following language appears on Plaintiff's 60-day review: "Called out for OT on 7/21/17." (DeAngelis Dec., Ex. D.)

**55.**   Other than "quality of work," no other category was marked as satisfactory on Plaintiff's 60-day review documentation. (Bader Dep., p. 55; DeAngelis Dec., Ex. D.)

**Response:** Disputed as incomplete. Plaintiff testified that in his 60-day review meeting with Ms. Densford and Mr. Bader, Ms. Densford complimented Plaintiff's performance and instructed to continue doing a good job. *Id.* at p. 196:13-24.

**Reply:** Plaintiff cannot dispute that, on his 60-day review, the only category marked as satisfactory was "quality of work." (DeAngelis Dec., Ex. D.) For purposes of Defendant's Motion for Summary Judgment, Defendant does not dispute that Plaintiff testified that Ms. Densford made those statements. Ms. Densford's words of affirmation, however, do not vitiate Plaintiff's 60-day review. Regardless, at that time, Ms. Densford was no longer Plaintiff's supervisor:

> A.   [Meagan Densford] was responsible for -- when Patrick originally came in, she would have been responsible for Patrick, the pack station workers. And during his time there, I took over the pack station, so Meagan moved to the shipping and training directly. And then she had training operators working for her -- I'm sorry -- shipping operators working for her.

> Q.   Do you recall when that change took place when you took over those responsibilities?

> A.   No. I don't exactly.

> Q.   Okay. Would it have been during the time of Mr. Dancy's employment there?

> A.   Oh, yeah. Yeah. Like I said, originally when he was -- when he was hired, so it was within -- within the -- or just slightly probably out of the 30 days that he was hired. And so, yeah. So she was in charge of him for a little bit, and then I was the rest of it.

(Bader Dep., p. 9.)

**59.**   Michael Bader's notes were included in advance of Plaintiff's 60-day review meeting. (Bader Dep., pp. 41, 55.)

**Response:** Disputed. Plaintiff testified that the document produced by Defendant in discovery is not identical to the document he received at the time of the meeting, as he would not have signed it if all the notations were present at the time of the meeting. *Id.* at p. 198:5-199:8.

**Reply:** This purported dispute is not material. Plaintiff cannot dispute that he failed to appear for his forced overtime shift on July 22, 2017. *See* Replies to Plaintiff's Responses to Fact Nos. 46, 48, and 54. Therefore, whether or not this failure appeared on his 60-day review at a particular point in time is immaterial as Plaintiff testified that the failure itself did in fact occur:

> Q.    So the fact that something is noted on here about overtime and attendance is not surprising since you did get a Formal Contact on the 26th of July for the overtime issue, right?
>
> A.    Okay. Yes. I got it. But just like I didn't sign that one because I didn't agree with it, I wouldn't have signed this because I don't agree with it.
>
> Q.    Okay.
>
> A.    Just because it's on here don't me I agree with it. and me signing this means I agree with it. I would never have signed this if this had been on there because I don't agree with it.

(Plf. Dep., pp. 199–200.) In other words, Plaintiff is free to disagree with the fact that he was written up for his failure to appear for his first forced overtime shift; it does not change the fact that he did not, in fact, appear for his first forced overtime shift.

**60.**    After Plaintiff's 60-day review meeting, nothing was added to the 60-day review documentation. (Bader Dep., pp. 55–56, 84.)

**Response:** Disputed. Plaintiff testified that the document produced by Defendant in discovery is not identical to the document he received at the time of the meeting, as he would not have signed it if all the notations were present at the time of the meeting. *Id.*

> **Reply:** *See* Reply to Plaintiff's Response to Fact No. 59.

**64.**    Plaintiff signed off and approved two pallets of material, even though the pallets used were incorrect. (Plf. Dep., p. 203; Bader Dep., pp. 57–58; DeAngelis Dec., Ex. E.)

**Response:** Undisputed that Plaintiff erroneously signed off on two pallets of material. Disputed as incomplete. Plaintiff testified that Mr. Strauss admitted he erroneously signed off on these

pallets. *Id.* at p. 112:24-113:4. Further, and the error was caught and rectified before the materials left Defendant's facility.

**Reply:** Defendant does not dispute that Paul Strauss committed the error. Moreover, like Plaintiff, he was also held accountable for this error. Also, the fact that an error was caught and rectified does not mean that an error was not committed. Plaintiff testified as much:

Q.     And you checked the box for proper pallet used, right?

A.     Yes.

Q.     And in those two instances the proper pallet was not used?

A.     Okay.

Q.     I'm sorry?

A.     Yes.

(Plf. Dep., p. 203.)

**67.**     Plaintiff understands that Paul Strauss, as a union employee, was protected by the union contract, which offered "multiple steps of discipline and then also multiple steps of grievance." (Plf. Dep., p. 191; Bader Dep., pp. 51, 58.)

**Response:** Undisputed that Mr. Strauss was a member of the union at Defendant's place of business and subject to the union contract. Disputed as mischaracterization that Plaintiff knew or understood what discipline or grievance procedures Mr. Strauss could take advantage of under such contract. Ex. A - Dancy Dep. at p. 139:6-10.

**Reply:** This purported dispute is not material. Plaintiff's understanding of the union contract does not affect the terms of the union contract, which indisputably offer "multiple steps of discipline and then also multiple steps of grievance." (Bader Dep., p. 51.) Regardless, Plaintiff himself confirms this fact: "Plaintiff understood that upon reaching ninety (90) days of

employment, he would become a member of the union at Defendant's place of business, and enjoy all the protections that came with such membership, **including disciplinary protections and grievance procedures.**" (Plf.'s Stmt. of Add'l. Fact No. 21.) Again, Plaintiff cannot simply avoid facts that are unfavorable to his position to defeat a motion for summary judgment.

**70.**     The formal contact also addressed Plaintiff's failure to appear for his first forced overtime shift on July 22, 2017. (Plf. Dep., p. 190; Bader Dep., p. 59.)

**Response:** Disputed. The formal contact document speaks for itself. Disputed further as to the basis for Plaintiff's failure to appear, as Plaintiff testified that he informed Mr. Bader over the phone on the weekend of July 22, 2017 that he had sustained an injury and was unable to come to work. *Id.* at p. 130:17-132:10.

**Reply:** *See* Replies to Plaintiff's Responses to Fact Nos. 46, 48, and 54. Moreover, the reasoning behind Plaintiff's failure to appear for his first forced overtime shift has no bearing on whether or not the formal contact addresses it. *See* DeAngelis Dec., Ex. E.

**71**.     A true and accurate copy of Plaintiff's formal contact is attached as Exhibit E to Liz Deangelis' Declaration. (DeAngelis Dec., ¶ 11.)

**Response:** Disputed as calling for a legal conclusion. The documents attached to Ms. DeAngelis' declaration speak for themselves.

**Reply:** Defendant is simply laying the foundation for the admissibility of Plaintiff's formal contact. Regardless, Plaintiff points to no facts in the record disputing this declaration.

**72.**     Plaintiff's formal contact was prepared and kept in the course of a regularly conducted business activity. (DeAngelis Dec., ¶ 12.)

**Response:** Disputed as calling for a legal conclusion. The documents attached to Ms. DeAngelis' declaration speak for themselves.

**Reply:** Defendant is simply laying the foundation for the admissibility of Plaintiff's formal contact. Regardless, Plaintiff points to no facts in the record disputing this declaration.

75.    A true and accurate copy of Plaintiff's termination letter is attached as Exhibit F to Liz Deangelis' Declaration. (DeAngelis Dec., ¶ 13.)

**Response:** Disputed as calling for a legal conclusion. The documents attached to Ms. DeAngelis' declaration speak for themselves.

**Reply:** Defendant is simply laying the foundation for the admissibility of Plaintiff's termination letter. Regardless, Plaintiff points to no facts in the record disputing this declaration.

76.    Plaintiff's termination letter was prepared and kept in the course of a regularly conducted business activity. (DeAngelis Dec., ¶ 14.)

**Response:** Disputed as calling for a legal conclusion. The documents attached to Ms. DeAngelis' declaration speak for themselves.

**Reply:** Defendant is simply laying the foundation for the admissibility of Plaintiff's termination letter. Regardless, Plaintiff points to no facts in the record disputing this declaration.

81.    Plaintiff does not deny that he received discipline during his employment with Defendant. (Plf. Dep., p. 224; Charge of Discrimination.)

**Response:** Undisputed that Plaintiff was disciplined during his employment. Disputed as to the justification of the discipline, as Plaintiff has asserted that white employees are not held to the same standards of behavior warranting discipline, and that African-American employees other than himself have been disciplined or terminated for comparable or identical offenses committed by white employees who were not disciplined or terminated. Ex. B - EEOC Charge; D.E. 1 - Compl. ¶¶ 52-56, 67-69; Ex. A - Dancy Dep. at p. 218:10-20.

**Reply:** Plaintiff's own words belie his attempt to dispute this fact; his Response states that, "Plaintiff has asserted. . . ." Plaintiff cannot manufacture a fact dispute through assertions alone. Regardless, he ignores his own testimony:

> Q.    You're not denying anywhere in this complaint that you received your discipline?
>
> A.    **Am I denying that I received the discipline? No, I'm not denying it.**

(Plf. Dep., p. 224.)

---

## PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS

---

**1.**    Mr. Dancy sat for an interview with a panel of Lanxess supervisory employees, including Bryan Mabry, Michael Bader, Megan Densford, and possibly an HR representative from Lanxess' Pittsburgh office. Ex. A - Dancy Dep. at p. 87:13-18.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

**2.**    Mr. Dancy estimates that this interview took place on or about November 5, 2016. *Id.* at p.88:20-89:5.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

**3.**    Ms. Liz DeAngelis, Lanxess' Human Resources representative operating out of the Pittsburgh office, then sent him an offer letter extending the general operator position on or about March or April 2017. *Id.* at p. 90:3-11.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

**4.**    After Plaintiff accepted the offer to work for Lanxess, he received three days of training and was then sent to a regular, twelve-hour shift. *Id.* at p. 94:11-98:18.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed. Defendant

would note that Plaintiff mischaracterizes his testimony:

> A.  No. I started off on Monday -- I started on a Monday and I had **orientation**
> Monday, Tuesday, and Wednesday.
>
> Q.  Okay.
>
> A.  And on Thursday they put me on a shift.
>
> . . .
>
> Q.  Okay. So when you first started, what would you say you were primarily
> doing the first -- so you had three days of **orientation** and what was that
> about? What did that entail?
>
> A.  Signing off on paperwork, getting your training materials, tour the plant,
> you know, letting you know where everything is and safety stuff, safety
> briefings.
>
> Q.  Did the first three days, did you have any hands-on training with the
> machines?
>
> A.  Not hands-on training but he showed me where the machines were, the guys
> were running them and what they did and what I would be doing.

(Plf. Dep., pp. 96–97.) "Orientation" and "training" are not mutually exclusive.

**5.**  At the time of Plaintiff's 30-day review, Ms. Densford, the production manager and Mr.

Dancy's supervisor, advised him that while he was doing a good job overall. *Id.* at p. 181:16-22.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed. *See* Reply to

Plaintiff's Response to Fact No. 30.

**6.**  Plaintiff acknowledged that this was on the job training, but felt it was deficient as the

facility was understaffed. *Id.* at 119:14-121:24.

**Response:** Plaintiff's feelings do not constitute facts. For purposes of Defendant's Motion for

Summary Judgment, however, undisputed.

**7.**      Mr. Sherrill was hired approximately two weeks after Mr. Dancy, also as a general operator working the pack station. Ex. A - Dancy Dep. at p. 92:8-17.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed. *See* Reply to Plaintiff's Response to Fact No. 22.

**8.**      Both Mr. Sherrill and Mr. Dancy reported to Ms. Densford and Mr. Bader. *Id.* at p. 152:14-153:12.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

**9.**      Mr. Sherrill had requested to be off the weekend of July 14, 2017 for his wedding anniversary, and Mr. Dancy had requested to be off the following weekend, July 22, 2017 for his own anniversary. *Id.* at p. 142:7-16.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

**10.**    Mr. Sherrill was given time off, and Mr. Dancy was not. *Id.* at p. 143:20-24.

**Response:** Plaintiff mischaracterizes the testimony. Mr. Sherrill was not "given time off," rather, he was not eligible for mandatory overtime on the weekend of his anniversary, unlike Plaintiff. *See* Fact No. 41, which Plaintiff does not dispute.

**11.**    Mr. Dancy testified that he injured himself mowing his lawn the Friday before he was scheduled for overtime, and called Mr. Bader to advise him that he was injured. *Id.* at p. 130:17-132:10.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

**12.**    Mr. Bader testified that Mr. Dancy did not advise he was sick, but that he called to inform Mr. Bader he was refusing to work his assigned forced overtime shift, in a flat refusal Mr. Bader considered insubordinate. Ex. C - Bader Dep. at p. 71:14-20, 72:8-19.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

13.     Mr. Dancy sought medical treatment for his injury over the weekend, and brought paperwork justifying his injury to Mr. Bader the following Monday. Ex. A - Dancy Dep. at p. 193:12-18.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed. Defendant would note that Plaintiff mischaracterizes his testimony:

Q.      And you did not bring a doctor's note or anything like that?

A.      Yes, I did.

Q.      You did?

A.      Yes.

Q.      Tell me about that.

A.      I gave a doctor's note to Michael Bader.

(Plf. Dep., p. 193.) The cited portion of the record does not stand for the proposition that that any paperwork *justified* Plaintiff's injury; rather, it stands for the proposition that Plaintiff brought a doctor's note to Mr. Bader.

14.     Both Mr. Dancy and Mr. Strauss held general operator job titles and were assigned to the pack station. *Id.* at p. 110:9-13

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

15.     Both Mr. Dancy and Mr. Strauss were supervised by Ms. Densford and Mr. Bader. *Id.* at p. 155:14-156:4.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed. Defendant notes that, after roughly thirty days of employment, Mr. Bader replaced Ms. Densford as Plaintiff's supervisor. *See* Reply to Plaintiff's Response to Fact No. 55.

**16.**     Both Mr. Dancy and Mr. Strauss were involved in an error at the pack station concerning a mislabeled, incorrectly packaged unit of materials. Ex. 5 to Dancy Dep.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

**17.**     Mr. Dancy testified that the product was placed on an incorrect pallet, that this error was isolated to only one pallet as far as he was told, and that the error was caught before the product left Defendant's premises. Ex. A - Dancy Dep at p. 110:18-112:3.

**Response:** Plaintiff mischaracterizes the testimony. Notwithstanding what he was told, Plaintiff testified:

> Q.     . . . And I want to make sure you don't disagree that you signed off on pallet 11 and 12 and that Paul Strauss signed off on pallet 13. On the second page it looks like that is a PD initial on pallet 11 and PD on pallet 12. I want to make sure those are your initials.
>
> A.     Yes.
>
> Q.     And you checked the box for proper pallet used, right?
>
> A.     Yes.
>
> Q.     And in those two instances the proper pallet was not used?
>
> A.     Okay.
>
> Q.     I'm sorry?
>
> A.     Yes.

(Plf. Dep., p. 203.) Clearly, Plaintiff confirmed that two pallets of material were affected. Again, Mr. Strauss received identical discipline for this incident: a formal contact.

**18.**     Ms. Densford advised Mr. Dancy that since the error had been caught, and the product was not shipped to the customer, the error was not a big issue and he would not be disciplined. *Id.* at 110:18-112:3, 154:20-25.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed. Defendant would note that Plaintiff leaves out critical testimony:

> A.   Well, me. Me. I think she told me she had already talked to Paul. But Meagan and I spoke one on one and she explained to me that we have to be careful. We have to make sure we are putting the product on the proper pallet. And she conveyed to me, she said, "Patrick, I know you're new and I know we are working a lot of hours. But we just have to be careful." She said, "luckily this time the mistake was caught before it left the building. So there's not customer complaint involved. So how we do this is if it's caught in-house, that's the end of it, you know, but you will need to be more careful. We caught it before it left the building so it's not a big issue, but we have to be careful."

> **Q.   And obviously that could be a big problem if something gets shipped on the wrong pallet?**

> **A.   Exactly.**

(Plf. Dep., pp. 111–12.) Plaintiff also testified that Ms. Densford stated that "'I'm not going to write you up this time because the pallet didn't leave the building.' She said, 'had it been shipped to a customer, then I would have had to write you up.'" (Plf. Dep., p. 154.) Notably, Ms. Densford did not write Plaintiff up, *Mr. Bader did*. Moreover, at that point in time, Ms. Densford was no longer Plaintiff's supervisor. Plaintiff testified:

> Q.   Other than yourself, are you aware of Michael Bader issuing anybody discipline?

> A.   No. Other than Paul Strauss, which Paul told me [Michael Bader] wrote him up -- you know, we got -- both got written up for the same thing.

(Plf. Dep., p. 155.) Simply stated, Plaintiff has not pointed to any portion of the record indicating that Mr. Bader stated that he would not write Plaintiff up for the pallet error.

**19.**   Both Mr. Dancy and Mr. Strauss received discipline for this action. *Id.* at p. 155: 14-18.

**Response:** For purposes of Plaintiff's Motion for Summary Judgment, undisputed.

20.      Mr. Dancy received discipline for this event via Formal Contact concerning his alleged failure to appear for his forced overtime shift on the weekend of July 22, 2017. Ex. 3 to Dancy Dep.

**Response:** For purposes of Plaintiff's Motion for Summary Judgment, undisputed.

21.      Plaintiff was terminated on the eighty-eighth (88) day of his employment with Defendant. Ex. A - Dancy Dep. at p. 210:8.

**Response:** For purposes of Plaintiff's Motion for Summary Judgment, undisputed.

22.      Plaintiff understood that upon reaching ninety (90) days of employment, he would become a member of the union at Defendant's place of business, and enjoy all the protections that came with such membership, including disciplinary protections and grievance procedures. *Id.* at p. 210:8-11.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

23.      Plaintiff testified that he believed he was terminated before his probationary period concluded so that the union could not be involved. *Id.* at p. 210:11-12.

**Response:** Plaintiff's beliefs do not constitute facts, nor is Plaintiff's belief, as stated above, material for purposes of Defendant's Motion for Summary Judgment if the desire for the union to not be involved motivated Defendant. In fact, such a motiviation actually undermines Plaintiff's claims of race discrimination.

24.      Plaintiff spoke with Plant Manager Brian Mabry immediately after his termination meeting with Mr. Bader. *Id.* at p. 209:20-25.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

**25.** Plaintiff testified that when he asked Mr. Mabry why he was being terminated, Mr. Mabry conveyed that he wished he had more time to evaluate Plaintiff, and that he was being terminated before the union could get involved. *Id.* at p. 209:25-210:8.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

**26.** Mr. Bader testified that management has the option of requesting an additional thirty (30) days to extend an employee's probationary period. Ex. C - Bader Dep. at p. 20:18-25.

**Response:** For purposes of Defendant's Motion for Summary Judgment, undisputed.

THIS the 23rd day of October, 2020.          Respectfully submitted,

                                             OGLETREE, DEAKINS, NASH,
                                             SMOAK & STEWART, P.C.


                                             *s/ W. Chris Harrison*
                                             W. Chris Harrison (TN Bar No. 18689)
                                             Jacob D. Strawn (TN Bar No. 35343)
                                             6410 Poplar Avenue, Suite 300
                                             Memphis, TN  38119
                                             Telephone:  (901) 767-6160
                                             Facsimile:  (901) 767-7411
                                             chris.harrison@ogletree.com
                                             jake.strawn@ogletree.com

                                             ***ATTORNEYS FOR DEFENDANT***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 23rd day of October, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF filing system, which sent notification of such filing to the following counsel of record:

> Catherine C. Walsh, Esq. (TN BPR #028168)
> Amanda M. Garland, Esq. (TN BPR #033843)
> THE CRONE LAW FIRM, PLC
> 88 Union Avenue, 14th Floor
> Memphis, TN 38103
> 901.737.7740 – Telephone
> 901.474.7926 – Facsimile
> cwalsh@cronelawfirmplc.com
> agarland@cronelawfirmplc.com
>
> ***Attorneys for Plaintiff***

 *s/ W. Chris Harrison*
W. Chris Harrison
*Counsel for Defendant*

44563050.1